# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**YUSEF LATEE WILLIAMS,**

        Petitioner,

v.                                      Case No. 05-C-233

**PHIL KINGSTON,**

        Respondent.

## DECISION AND ORDER ON THE PETITION
## FOR A WRIT OF HABEAS CORPUS

    Yusef Latee Williams ("Williams") is a prisoner incarcerated pursuant to a Wisconsin state court judgment. Proceeding pro se, he seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On July 11th, 2005, this court screened Williams' petition in accordance with Rule Four of the Rules Governing Section 2254 Cases and order the respondent to answer the petition. On August 10, 2005, the respondent answered the petition. On August 29, 2005, Williams filed a motion for default judgment, which the court denied on February 14, 2006. On October 29, 2007, this court ordered the respondent to provide copies of the transcripts of the state court proceedings pursuant to Rule 5(c) of the Rules Governing Section 2254 Cases. These transcripts were received on November 6, 2007.

    In his petition, Williams asserts twenty-one grounds for relief. Many of the grounds, although set forth individually, support a single basis for relief. For example, grounds fourteen through seventeen all allege that relief is warranted based on the ineffective assistance of Williams' trial counsel. Conversely, many of the same facts are discussed in support of separate legal theories.

Grounds one through four are all based on testimony presented by Deputy Haack, but each ground alleges that relief is warranted for a different reason: (1) Deputy Haack's testimony violated Williams' right to a fair trial, (2) trial counsel was ineffective for failing to prevent Deputy Haack's testimony, (3) Deputy Haack's testimony constituted inadmissible other act evidence, and (4) the trial court committed error by allowing Deputy Haack's testimony. Based on the foregoing, it is clear that many of Williams' claims are somewhat related.

**PROCEDURAL HISTORY**

On March 27, 1996, following a jury trial, Williams was convicted of first-degree intentional homicide, in violation of Wisconsin Statute § 940.01(1). (Ans. Ex. A.) On May 1, 1996, he was sentenced to life in prison with a parole eligibility date of May 1, 2041.(Ans. Ex. A.) On September 30, 2004, the court of appeals affirmed Williams' conviction. (Ans. Ex. B.) Williams' attorney had previously submitted a "no-merit" report pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967) and Wisconsin Statute 809.32(1). (Ans. Ex. B at 1.) Williams had filed a response to the no-merit report wherein he raised nineteen issues. (Ans. Ex. B at 2.) The reason for the more than eight years between Williams' sentencing and the court of appeals' resolution of his appeal is unclear; however, the court need not concern itself with this question because the respondent admits that Williams' petition was timely filed. (Ans. ¶4.) Williams' petition for review was denied by the Wisconsin Supreme Court on January 11, 2005. (Ans. Ex. E.)

**STANDARDS OF REVIEW**

Where the state court adjudicates the merits of a petitioner's claim, this court may grant habeas corpus relief if the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court explained in Williams v. Taylor, § 2254(d)(1) establishes two independent grounds on which a federal court can grant habeas corpus relief: (1) if a state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court, or (2) if a state court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court. 529 U.S. 362, 404-05 (2000); see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir.2000). The "contrary to" standard requires a state court decision to be "substantially different from the relevant precedent of [the Supreme Court]." Williams, 529 U.S. at 405. For example, a state court decision applying a rule that contradicts the governing law set forth by the Supreme Court would qualify, as would a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result. Id. at 405-06. By contrast, a state court decision that draws from Supreme Court precedent the correct legal rule and applies it in a factually distinguishable situation will not satisfy the "contrary to" standard, no matter how misguided the decision's ultimate conclusion. Id. at 406-07.

Under the "unreasonable application" prong of (d)(1), relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case. Williams, 529 U.S. at 404. An unreasonable application of federal law, however, is different from the incorrect or erroneous application of federal law. Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (citing Williams, 529 U.S. at 410). A federal court simply disagreeing with the state

court decision does not warrant habeas relief-the decision's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Under § 2254(d)(2), relief may be had where the petitioner demonstrates that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Here again, an unreasonable determination is more than a determination that is simply incorrect or erroneous. Moreover, state court factual determinations are presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by "clear and convincing evidence." § 2254(e)(1). Rice v. Collins, 546 U.S. 333, 339 (2006) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)).

With the § 2254(d) and (e)(1) standards in mind, the court will now turn to the issues raised by the petitioner.

**ANALYSIS**

As categorized by this court, Williams raises the following grounds for relief in his petition:

(1). Testimony of Sheriff Deputy Haack.

    (A). His conviction was by the "unconstitutional use of bailiff's testimony thus violating defendant's right to a fair trial." (Pet. 22A.) In support, Williams states "Deputy Haack testified for the State. Deputy Haack was also the bailiff of the court and the jury's caretaker." (Pet. 22A.)

    (B). Denial of effective assistance of counsel for his attorney's failure to object to Deputy Haack's testimony. (Pet. 22B.)

4

(C). Deputy Haack testified about an incident that was not relevant and thus his testimony biased the jury. (Pet. 22C.)

(D). The trial court abused its discretion when it permitted Deputy Haack to testify. (Pet. 22D.)

(E). Deputy Haack was not listed as a government witness and he never provided a statement prior to testifying. (Pet. 22J.)

(F). As a result of Deputy Haack's testimony, the court imposed an excessive sentence. (Pet. 22T.)

(2). Preliminary Hearing

(A). The court abused its discretion in adjourning the preliminary hearing, there was insufficient evidence to bind the defendant over for trial, the court lost subject matter jurisdiction by not conducting the hearing within ten day, and the court improperly admitted hearsay testimony. (Pet. 22E.)

(B). Williams was "pre-identified" to the state's witness prior to hearing. Williams alleges he never met the state's witness prior to the hearing. (Pet. 22F.)

(C). The failure of his counsel at the preliminary hearing, at trial, or on appeal, to object to this allegedly tainted identification denied Williams the effective assistance of counsel. (Pet. 22G.)

(3). Denial of Right of Appeal

(A.) Williams did not receive a "fair and errorless" trial, "has a right to argue the issues of the preliminary hearing, and are not barred." (Pet. 22H.)

(B.) Williams was denied the right to pursue an interlocutory appeal because the trial court did not decide the motion regarding the preliminary hearing until the first day of the trial. (Pet. 22I.)

(4). Closing Arguments

(A). The prosecution impermissibly shifted the burden of proof to the defendant in numerous instances in his closing arguments. (Pet. 22K.)

(B.) Williams' trial counsel was ineffective for failing to object to the prosecutor's closing argument and for not moving for a mistrial. (Pet. 22L.)

(5). Coercion and Bribery of Witness

(A.) A police detective took a witness' Social Security Insurance check and only gave it back to the witness after the witness testified. (Pet. 22M.)

(B.) Williams' trial counsel was ineffective for failing to object to "the coercion and bribery of the state's witness." (Pet. 22N.)

(C.) Williams' trial counsel was ineffective for not presenting the issue that a government witness was testifying in exchange for his Social Security Insurance check. (Pet. 22O.)

(6). Denial of Effective Assistance of Counsel

(A.) Williams' trial counsel was ineffective for failing to bring out the issue that a state witness "receive[d] a government check for having mental problems / disorders" but had told a police detective that he had no mental problems. (Pet. 22P.)

(B.) Williams' trial counsel was ineffective for "repeatedly demonstrat[ing] a lack of diligence." (Pet. 22Q.)

6

(7). Other Matters

> (A.) The trial court lacked jurisdiction over him because "all alleged attorneys did not have a license to practice law. The tribunal was never legally organized . . . ." (Pet. 22R.)
>
> (B.) The court of appeals denied relief.
>
> (C.) The Wisconsin Supreme Court denied Williams' petition for review.

**Testimony of Sheriff Deputy Haack**

As Williams makes clear in his brief, it is generally inappropriate to have the bailiff who is charged with safeguarding the jury and ensuring the integrity of its deliberations also appear as a witness at the trial. See, e.g., Turner v. Louisiana, 379 U.S. 466 (1965); Agnew v. Leibach, 250 F.3d 1123 (7th Cir. 2001). The court of appeals found that Williams' arguments regarding this issue lacked arguable merit and therefore denied Williams' appeal on its merits. Wilkinson v. Cowan, 231 F.3d 347, 351 (7th Cir. 2000). Therefore, the question before this court is whether the court of appeals' decision was contrary to, or an unreasonable application of federal law as determined by the United States Supreme Court?

"When a key witness against a defendant doubles as the officer of the court specifically charged with the care and protection of the jurors, associating with them on both a personal and an official basis while simultaneously testifying for the prosecution, the adversary system of justice is perverted." Agnew v. Leibach, 250 F.3d 1123, 1132 (7th Cir. 2001) (quoting Gonzales v. Beto, 405 U.S. 1052, 1055-56 (1972).

Turner, Gonzales, and Agnew, like the present case, involved instances where sheriffs served dual roles, acting both as witnesses for the prosecution and the neutral role of safeguarding the jury. Agnew, 250 F.3d at 1133. The Seventh Circuit recognized that Turner established two elements to a claim that a defendant's right to a fair trial is violating by having a bailiff testify as witness for the prosecution: (1) the bailiff must have "had a special relationship with the jury;" and (2) the bailiff "provided key testimony relating to substantive evidence of the defendant's quilt." Agnew, 250 F.3d at 1134. Williams fails to present any evidence to demonstrate that either element was present in his case. There is no evidence as to the nature of Deputy Haack's relationship with the jury. Although a bailiff performing his necessary duties of safeguarding the jury will necessarily involve some level of interaction, the court has no reason to believe that Deputy Haack's interactions were anything but minimal and superficial. For example, unlike the jury in Turner and Gonzales, the jury in Williams' case was not sequestered. (See Docket No. 2 at 31.)

Further, Williams fails to demonstrates that Deputy Haack's testimony was "key" or provided anything more than circumstantial evidence of his guilt. Williams included the transcript of Deputy Haack's testimony as an appendix to his brief. (Docket No. 2 at 26-31.) Deputy Haack was called as rebuttal witness for the state and testified that as part of his duties, the night before he observed Williams yelling "Franco, Franco," through a door into a room where a witness against Williams was located. (Docket No. 2 at 28.) Deputy Haack asked Williams to step away from the door and "[i]t became necessary to physically force him away from the room, at which point we placed Mr. Williams in a room for security." (Docket No. 2 at 28.) Deputy Haack then entered into the room where the witness was and assured that witness that everything would be alright. (Docket No. 2 at 30.) The witness was "cowering in a corner, fearing for his life." (Docket No. 2 at 30.) Approximately fifteen-

minutes later, Deputy Haack passed by the same area and heard Williams yelling "Angelo, Angelo you are dead." (Docket No. 2 at 29.)

Having reviewed the transcript of the entire trial, it is clear that Deputy Haack's testimony was comparatively minor and relatively inconsequential and thus far from "key." In fact, Williams concedes as much when he argues, albeit unpersuasively, that Deputy Haack's testimony was not relevant. (Pet. 22C.)

Moreover, the court finds it significant that it was Williams himself that first referred to the bailiff and indicated that the bailiff may have relevant information. When Williams testified in his own defense, his defense was that Angelo Tate ("Tate"), who testified that he witnessed Williams shoot the victim, was lying because he was mad that Williams would not give him cocaine. The following exchange occurred during the direct examination of Williams:

> [Defense Counsel]: Do you know why Angelo would say that you did that?
>
> [Williams]: Because he probably was mad because I wouldn't give him cocaine. And also, then the Court don't know about this, but he knows. The bailiff knows.
>
> [Defense Counsel]: You just need to answer the question.
>
> [Williams]: Why would I –

(Docket No. 17, Ex. D at 40-41.) It was only in rebuttal, immediately after Williams' testimony, and on the same day that Williams testified, that the state called Deputy Haack. There is no indication that absent Williams' opening this door that the state would have called Deputy Haack; the incident that Deputy Haack testified to occurred before the state rested its case and thus he could have been called in the state's case in chief.

Finally, the court finds it significant that unlike the bailiffs in Turner, Gonzales, and Agnew where the bailiff provided testimony that was not related to his duties and responsibilities as a bailiff, but rather related to their essentially unrelated investigative duties as law enforcement officers, in the present case, Deputy Haack's testimony was directly related to his duties as a bailiff. It was in carrying out his duties of ensuring courtroom security that he acquired the knowledge to which he testified. Therefore, for the reasons set forth above, the court is unable to conclude that the decision of the court of appeals with respect to any of his claims relating to the testimony of Deputy Haack was clearly contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court.

**Preliminary Hearing**

Many of the Williams' claims related to his preliminary hearing are matters of state law that are not cognizable in a federal habeas corpus petition. However, the court shall address (1) whether the admission of hearsay testimony violated Williams' right to confrontation; (2) whether Williams' due process rights were violated by a "pre-identification;" and (3) whether he was denied the effective assistance of counsel when counsel failed to object to Williams' identification.

The only evidence of Williams' guilt that was admitted at the preliminary hearing was the testimony of Henry Moffitt ("Moffitt"), who testified that he met Darvin Harris ("Harris") while incarcerated at the Milwaukee County Criminal Justice Facility. (Docket No. 17, Ex. A.) Harris, Williams' brother and co-defendant in this case, told Moffitt that his "brother," who Moffitt met previously and knew to be Williams, shot the victim in the head. (Docket No. 17, Ex. A.) The state court permitted this hearsay in reliance upon State v. Thompson, 142 Wis. 2d 821, 419 N.W.2d 564 (Ct. App. 1987). (Docket No. 17, Ex. A.)

It is well established that a defendant does not have a constitutional right to confrontation at a preliminary hearing. Barber v. Page, 390 U.S. 719, 725-26 (1968); see also Gerstein v. Pugh, 420 U.S. 103, 120 (1975). The sole purpose of a preliminary hearing is to determine probable cause, and hearsay may be utilized to determine probable cause.

As for issues relating to Williams' identification, Williams alleges that he never met Moffitt before seeing him in court. Williams alleges that Moffitt was able to identify him because the prosecutor pointed out Williams to Moffitt before the hearing. Williams fails to present any evidence to support his claim. In fact, Moffitt testified that he was familiar with Williams before he was mentioned in connection to this case. Specifically, Moffitt testified that he first met Williams about five months earlier at a store located at 3rd and Center in Milwaukee. (Docket No. 17, Ex A at 10, 16.) Because Moffitt specifically testified that his identification was based upon his prior knowledge of Williams, Williams' challenge to his identification lacks merit. Further, Williams, himself, corroborated Moffitt's testimony when Williams testified in his own defense at trial that he frequented a store located at 3rd and Center. (Docket No. 17, Ex. D at 38.) It was at this store that Williams allegedly first heard of the victim's death. (Docket No. 17, Ex. D at 38.) Because Williams' argument regarding his identification lacked merit, Williams was not denied the effective assistance of counsel by his trial and appellate counsel failing to raise this issue. Therefore, for the reasons set forth above, the court finds that the decision of the state court with respect to the issues Williams raised in regards to his preliminary hearing was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

**Closing Arguments**

Williams argues that his due process rights were violated because at numerous points during closing arguments, the prosecutor impermissibly shifted the burden of proof to Williams, and that his trial counsel was ineffective for not objecting to these alleged errors.

> The leading Supreme Court decision on the question whether prosecutorial misconduct is so egregious that a new trial is required, as a matter of constitutional law, is <u>Darden v. Wainwright</u>, 477 U.S. 168 (1986). In <u>Darden</u>, the Court set forth six factors that should be considered in deciding this question: (1) whether the prosecutor misstated the evidence, (2) whether the remarks implicate specific rights of the accused, (3) whether the defense invited the response, (4) the trial court's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut. 477 U.S. at 181-82.

<u>Howard v. Gramley</u>, 225 F.3d 784, 793 (7th Cir. 2000).

Even if a petitioner is able to demonstrate that a multiple of the <u>Darden</u> factors cut in his favor, a finding of prosecutorial misconduct does not automatically follow. <u>Id.</u> Rather, the most important factor is the weight of the evidence against the defendant. <u>Id.</u>

Having reviewed the prosecutor's closing argument and rebuttal argument, the court has found no instance where the prosecutor ever impermissibly shifted the burden to the defense. Further, in light of the weight of evidence against Williams, the court is unable to say that there is any evidence to support an argument that Williams' due process rights were violated. Therefore, the court finds that Williams fails to demonstrate that the decision of the state court was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

12

Case 2:05-cv-00233-AEG   Filed 12/27/07   Page 12 of 17   Document 18

**Coercion and Bribery of Witness**

Williams alleges that Tate's testimony was coerced because a police detective took a witness' Social Security Insurance check and only gave it back to the witness after the witness testified, (Pet. 22M), and that charges against Tate were dropped after he testified, (Pet. Mem. at 17).

Williams fails to present any evidence to support these allegations. Williams has not filed a motion for discovery or for an evidentiary hearing. In the absence of any evidence to support his claim, Williams fails in his burden under 28 U.S.C. § 2254(e)(1). However, in light of Williams' pro se status, the court shall address the issue as if Williams had made a formal request for discovery or an evidentiary hearing.

"[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry." Bracy v. Gramley, 520 U.S. 899, 909 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 298 (1969)).

Having reviewed the record in this case, it is the conclusion of this court that even if Williams' allegations were proven, he would not be entitled to relief, and therefore is not entitled to an evidentiary hearing or discovery. Accepting Williams' allegations as true, based upon the weight of the evidence presented in this case, the court finds that even if the jury learned of Tate's motives to lie, it would have been extremely unlikely that it would have reached any other conclusion than it did.

Tate's testimony was only one piece of the government's case, albeit arguably the most significant point. However, it was corroborated by other evidence. The physical evidence was entirely consistent with the events that Tate described. Ladawana Norris ("Norris") testified that she observed Williams and another man carrying and concealing the victim's body in the basement of the home

where Tate testified he witnessed the murder. Finally, a police detective testified that as part of his investigation he visited the crime scene and determined that, contrary to the defense's contention, Tate would have been able to see the events he described from the positions he stated he was. When this corroborative testimony is considered alongside Tate's testimony, it is far more likely that regardless of Tate's potential motives to fabricate, the jury would nonetheless conclude he was telling the truth. Williams' allegations support only the conclusion that Tate had a motive to testify and not necessarily that he had a motive to lie; the jury would surely recognize that occasionally incentives are necessary to encourage even truthful testimony.

Finally, regardless of his counsel's alleged inaction, if Williams thought any of Tate's alleged motivations to lie were relevant, he was explicitly given the opportunity to present them to the jury. As discussed above, while testifying on his own behalf, Williams was explicitly asked why Tate would lie. The only explanation Williams could muster was that Tate was upset because Williams would not give him cocaine. Williams later testified that Tate was also upset because Williams did not give him money. (Docket No. 17, Ex D, at 41.)

Therefore, this court is unable to say that it was unreasonable or prejudicial for Williams' trial counsel not to pursue this investigation. Thus, this court would be unable to say that Williams had satisfied the high standard of demonstrating that the decision of the state court was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

**Ineffective Assistance of Counsel**

Williams alleges that his trial counsel was ineffective for failing to bring out the issue that a state witness "receive[d] a government check for having mental problems / disorders" but had told a

14

police detective that he had no mental problems, (Pet. 22P), and for "repeatedly demonstrat[ing] a lack of diligence." (Pet. 22Q.)

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that the Wisconsin court's decision was either contrary to, or the based on an unreasonable application of, federal law. Williams v. Davis, 301 F.3d 625, 631 (7th Cir. 2002) (applying § 2254(d)(1) standards). The applicable federal law governing ineffective assistance claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires the petitioner to show: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) the deficient performance caused him prejudice. 466 U.S. at 687-88 (1984); Roche v. Davis, 291 F.3d 473, 481-82 (7th Cir.2002); Montenegro v. United States, 248 F.3d 585, 590 (7th Cir. 2001). Courts review counsel's performance under the first prong deferentially, presuming reasonable judgment unless the factual record rebuts such a presumption. See Strickland, 466 U.S. at 689; Matheney v. Anderson, 253 F.3d 1025, 1039 (7th Cir.2001).

With regard to the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. See Strickland, 466 U.S. at 689; Matheney, 253 F.3d at 1039-40. If the court finds that the counsel's alleged deficiency did not prejudice the defendant under the second prong, the court need not consider the first prong of the Strickland test. Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003).

As for Williams' specific allegation that his trial counsel was ineffective for failing to impeach Tate for alleged inconsistencies regarding his mental health status, assuming that Williams allegations are true and that such lack of impeachment was unreasonable, it would be impossible for this court to conclude that trial counsel's failure to bring this information out resulted in prejudice to Williams.

15

The fact Tate may have made inconsistent statements regarding his mental problems, or had mental problems, would not have been at all surprising to the jury and in no way would this revelation have likely created a different result in this case. The state made no effort to hide the fact that Tate had numerous problems, including a long history of alcohol and drug abuse. But it was the prosecution's theme, as enunciated in its closing, that regardless of Tate's problems, he was perfectly competent to recognize a murder occurring in front of him and identify the perpetrators. The jury verdict reflects that the jurors agreed with this version of events.

As for Williams' ambiguous assertion that his trial counsel repeatedly demonstrated a lack of diligence, the court has reviewed the record in this case, including the entire trial transcript, and has not recognized any actions on the part of defense counsel that would be considered objectively unreasonable and certainly none that resulted in prejudice to Williams.

**All Other Grounds**

As for all other grounds for relief raised by Williams in his petition, Williams fails in his burden of rebutting the presumption by clear and convincing evidence that the decision of the state court was incorrect. 28 U.S.C. § 2254(e)(1). Further, many of the grounds for relief raised by Williams are not cognizable in federal petition for habeas corpus. For example, Williams' claims for relief relating to the fact that the court of appeals denied his appeal and the Wisconsin Supreme Court denied his petition for review, these claims are not independently cognizable in a petition for habeas corpus in federal court. Therefore, the court is unable to conclude that the decision of the court of appeals was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court. Thus, because Williams fails in his burden of demonstrating the decision of the state court was incorrect, the court must deny Williams' petition.

16

Case 2:05-cv-00233-AEG    Filed 12/27/07    Page 16 of 17    Document 18

**IT IS THEREFORE ORDERED** that Williams' petition for a writ of habeas corpus is **denied**. The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 27th day of December, 2007.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge